# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

AARON ORNSTEIN,

          Plaintiff,

    v.

WARDEN, *et al.*,

          Defendants.

No. 3:18-CV-02042

(Chief Judge Brann)

## MEMORANDUM OPINION

### SEPTEMBER 21, 2021

Plaintiff Aaron Ornstein, who was formerly incarcerated in the York County Prison in York, Pennsylvania, filed a complaint pursuant to 42 U.S.C. § 1983 alleging constitutional violations arising from an alleged assault by prison officials. Plaintiff additionally asserts that the medical care he received after the assault was unconstitutionally inadequate. Defendants have filed motions for summary judgment, which are ripe for disposition. For the reasons that follow, the motion for summary judgment filed by Defendants PrimeCare Medical, Inc.,[1] Forsythe, and Denafrio ("the PrimeCare Defendants") will be granted, and the motion for summary judgment filed by the remaining Defendants ("the York County Defendants") will be granted in part and denied in part.

---

[1] This Defendant is erroneously named in the complaint as "Prime Care Health Care."

## I.    BACKGROUND

Plaintiff initiated this case through the filing of a *pro se* complaint under 42 U.S.C. § 1983 on October 19, 2018.[2]  The PrimeCare Defendants moved to dismiss the complaint on February 21, 2019,[3] and in response Plaintiff moved for leave to amend the complaint.[4]  The Court granted the motion for leave to amend and docketed the amended complaint on February 28, 2019.[5]  Defendants answered the amended complaint on March 6, 2019 and March 8, 2019.[6]

The PrimeCare Defendants moved for judgment on the pleadings on May 15, 2019.[7]  The Court denied the motion, but *sua sponte* dismissed the civil rights claim raised against the PrimeCare Defendants for failure to state a claim upon which relief could be granted.[8]  Thus, the only claims that remained against the PrimeCare Defendants were Plaintiff's state law negligence claims.[9]

On April 9, 2020, Attorney John F. Mizner entered his appearance on Plaintiff's behalf.[10]  Fact discovery in the case closed on September 9, 2020,[11] after which the Defendants filed separate motions for summary judgment.[12]  Plaintiff

---

[2]    Doc. 1.
[3]    Doc. 28.
[4]    Doc. 31.
[5]    Docs. 34-35.
[6]    Docs. 39, 41.
[7]    Doc. 47.
[8]    Docs. 57-58.
[9]    *See id.*
[10]   Doc. 60.
[11]   Doc. 66.
[12]   Docs. 67, 71.

filed an opposition brief through counsel on November 9, 2020.[13]  No reply briefs in support of the motions have been filed, and the deadline for doing so has expired.  Accordingly, the motions are ripe for the Court's disposition.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14]  "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[15]  "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[16]  "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a prima facie case under applicable substantive law."[17]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[18]  Thus, "if the defendant in a

---

[13]  Doc. 73.

[14]  Fed. R. Civ. P. 56(a).

[15]  *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (first citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); and then citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[16]  *Clark*, 9 F.3d at 326.

[17]  *Id.*

[18]  *Anderson*, 477 U.S. at 252.

run-of-the-mill civil case moves for summary judgment or for a directed verdict based on a lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[19] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[20] "The judge's inquiry, therefore unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[21] The evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[22] "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates

---

[19] *Id.*
[20] *Id.*
[21] *Id.* (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).
[22] *Celotex*, 477 U.S. at 323 (internal quotations omitted).

that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[23]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[24]  For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[25]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant."[26]  Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[27]  On a motion for summary judgment,

---

[23]  *Id.*

[24]  *Anderson*, 477 U.S. at 250.

[25]  Fed. R. Civ. P. 56(c)(1).

[26]  *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

[27]  Fed. R. Civ. P. 56(e)(2).

"the court need consider only the cited materials, but it may consider other materials in the record."[28]

Finally, "at the summary judgment stage the judge's function is not himself to weight the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[29] "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[30] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[31]

## III. THE PRIMECARE DEFENDANTS, YORK COUNTY, AND THE JOHN DOE DEFENDANTS WILL BE GRANTED SUMMARY JUDGMENT

As an initial matter, we will address the PrimeCare Defendants' motion, which seeks summary judgment as to all remaining claims against them.[32] Plaintiff concedes that the PrimeCare Defendants should be granted summary judgment, stating that he does not oppose their motion "in the interest of judicial economy."[33] Accordingly, we will grant the PrimeCare Defendants' motion for summary judgment.

---

[28] Fed. R. Civ. P. 56(c)(3).
[29] *Anderson*, 477 U.S. at 249.
[30] *Id.*
[31] *Id.* at 249-50 (internal citations omitted).
[32] *See* Doc. 67.
[33] Doc. 73 at 2.

We will also grant summary judgment as to York County and John Doe Defendants "Warden" and "Deputy Warden," as Plaintiff concedes that there is no evidence to support his claims against those Defendants.[34]

Finally, we will grant summary judgment to all the other John Doe Defendants—identified as Captain John Doe, Lieutenant John Doe, Nurse Jane Doe, and Doctor John Doe—because Plaintiff has not identified those Defendants and the deadlines for discovery and amendment of pleadings have expired.[35] Accordingly, the remainder of this opinion shall only pertain to Plaintiff's claims against Defendants Cessna, Fitski, and Velasquez.[36]

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

York County Defendants argue that they are entitled to summary judgment because Plaintiff failed to exhaust administrative remedies.  Under the Prison

---

[34]  *See* Doc. 73 at 14 n.1.  Although Plaintiff only explicitly concedes to judgment in favor of the warden Defendants and not in favor of York County, he acknowledges that there is no evidence to support his 'failure to train' claim, *see id.*, and York County is only named as a Defendant with respect to that claim.  *See* Doc. 35.  Accordingly, we will grant summary judgment to all three of these Defendants.

[35]  *See, e.g.*, *Graham-Smith v. City of Wilkes-Barre*, No. 3:17-CV-00239, 2020 WL 9607112, at *5 (M.D. Pa. Feb. 26, 2020) ("[I]f a plaintiff fails to amend a complaint to identify unnamed John Doe defendants, a court may *sua sponte* dismiss those defendants prior to ruling on a summary judgment motion." (citing *King v. Mansfield Univ. of Pa.*, No. 1:11-CV-01112, 2014 WL 4546524, at *10 (M.D. Pa. Sept. 12, 2014)), *report and recommendation adopted*, No. 3:17-CV-00239, 2021 WL 2020591, at *11 (M.D. Pa. May 19, 2021); *Millbrook v. United States*, 8 F. Supp. 3d 601, 609 (M.D. Pa. Mar. 25, 2014) ("John/Jane Doe defendants may only be allowed 'to stand in for the alleged real parties until discovery permits the intended defendants to be installed.'" (quoting *Johnson v. City of Erie*, 834 F. Supp. 873, 878 (W.D. Pa. 1993))).

[36]  Because all York County and John Doe Defendants will be dismissed from the case, the Court will collectively refer to Defendants Cessna, Fitski, and Velasquez as the "York County Defendants" throughout the remainder of this opinion.

Litigation Reform Act ("PLRA"), a prisoner complaining about the conditions of

his confinement must exhaust available administrative remedies before he may file

suit in federal court.[37]  The PLRA requires proper exhaustion, meaning that a

plaintiff must administratively grieve his complaint in accordance with the

procedural rules imposed by the prison in which the prisoner is incarcerated.[38]

Plaintiff's complaint in this case arises from his time in York County Prison.

The prison's applicable grievance procedure states as follows:

> Grievance complaints should be filed within ten (10) days of the act(s)
> or omission(s) or conditions that form the basis of the complaint.  In no
> event will any grievance be considered after six (6) months unless for
> cause shown establishing that the inmate was physically or mentally
> unable to file a grievance.  No complaint will be considered more than
> one (1) year after the acts(s) [sic] or omission[s] or conditions that form
> the basis of the complaint.  Inmates who are transferred to another
> institution or released from the York County Prison may file grievance
> complaints, in writing, by addressing a letter to the Deputy Warden –
> Treatment, York County Prison.[39]

York County Defendants argue that Plaintiff failed to exhaust administrative

remedies under this policy because the incident in question occurred on May 13,

2017, and he did not file a grievance about the incident until approximately three

---

[37]  42 U.S.C. § 1997e(a).

[38]  *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Woodford v. Ngo*,
548 U.S. 81, 88 (2006)).

[39]  Doc. 70-1 at 15.

months later, on August 15, 2017.[40]  Defendants assert that a grievance was

required to be filed within ten days under the prison's grievance policy.[41]

Defendants are mistaken.  By using the permissive "should" rather than the

mandatory "shall,"[42] the prison's grievance policy suggests that grievances be filed

within ten days, but it does not require that grievances conform to that timeline.

The first mandatory deadline imposed by the prison's grievance policy is six

months after the incident in question,[43] and it is undisputed that Plaintiff filed his

grievance before that deadline.  Thus, we conclude that Plaintiff has exhausted his

administrative remedies under the PLRA.

Plaintiff also was not required to appeal the denial of his grievance through

subsequent stages of York County Prison's grievance system.  A prison's failure to

follow its own grievance procedures renders administrative remedies unavailable

and means that the prisoner plaintiff has exhausted his administrative remedies.[44]

---

[40]  *See* Doc. 72 at 12-19.

[41]  *Id.*

[42]  *See United States v. Swan*, 275 F.3d 272, 278-79 (interpreting "should" as a non-mandatory, permissive modal verb); *In re Meyertech Corp.*, 831 F.2d 410, 422 n.15 (3d Cir. 1987) (deeming "should" as a "permissive rather than a mandatory term"); *Santanna v. Del. & Hudson R. Co., Inc.*, No. 3:12-CV-01240, 2015 WL 5895463, at *1 (M.D. Pa. Oct. 6, 2015) (concluding that "use of the permissive 'should' instead of the mandatory 'shall'" granted actor discretion to act rather than requiring action.

[43]  *See* Doc. 70-1 at 15 ("In no event will any grievance be considered after six (6) months unless for cause shown establishing that the inmate was physically or mentally unable to file a grievance.").

[44]  *See Shifflett v. Korszniak*, 934 F.3d 356, 365 (3d Cir. 2019) ("[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement.").

Thus, when the prison dismissed Plaintiff's grievance as untimely despite the clear language of the prison's policy showing that the grievance was timely, the prison rendered subsequent stages of the grievance process unavailable and Plaintiff was entitled to file suit in federal court at that moment.[45]

## V.    MATERIAL FACTS

Having resolved all preliminary matters and the issue of exhaustion, the Court turns its attention to the facts that are material to the York County Defendants' motion.  Local Rule 56.1 requires a party moving for summary judgment to submit "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried."[46]  The non-movant must file a statement in response to the movant's statement that responds to the numbered paragraphs in the movant's statement and sets forth which paragraphs present a genuine issue of material fact.[47]  Any facts that are set forth in the movant's statement that are not contradicted by the non-movant's statement are "deemed to be admitted."[48]

In this case, York County Defendants complied with Local Rule 56.1 by filing a statement of material facts,[49] but Plaintiff failed to file a response as

---

[45] *See id.* at 365-66.
[46] M.D. Pa. L.R. 56.1.
[47] *Id.*
[48] *Id.*
[49] Doc. 70.

required by Local Rule 56.1.  Accordingly, all facts set forth in the York County Defendants' statement of material facts are deemed admitted for purposes of resolving the instant motion.[50]

Plaintiff was admitted to the York County Prison on May 13, 2017 on charges of bank robbery, theft by unlawful taking, receiving stolen property, tampering with or fabricating physical evidence, and institutional vandalism.[51] Plaintiff met Defendant Cessna, a correctional officer in the prison, on that date.[52] Plaintiff was behaving erratically at the time.[53]

While Plaintiff was in the room with Defendant Cessna, he suddenly and without warning or provocation slammed his shoulder into Cessna.[54]  Plaintiff told Cessna that he would "kick [his] ass."[55]  Cessna responded to Plaintiff's actions by grabbing Plaintiff and using a "leg sweep" to put him on the ground.[56]  Cessna and other corrections officers responding to the incident attempted to place Plaintiff in hand restraints, but Plaintiff resisted their efforts.[57]  The officers called in the Certified Emergency Response Team ("CERT"), which used force to control

---

[50]  *See* M.D. Pa. L.R. 56.1; *see also, e.g.*, *Conn v. Bull*, 307 F. App'x 631, 633 (3d Cir. 2009); *Giovanetti v. Dep't of Corr.*, No. 1:17-CV-01787, 2020 WL 4924545, at *1 (M.D. Pa. Aug. 21, 2020); *Landmesser v. Hazleton Area Sch. Dist.*, 982 F. Supp. 2d 408, 413 (M.D. Pa. 2013).

[51]  Doc. 70 ¶ 23.

[52]  *Id.* ¶ 24.

[53]  *Id.*

[54]  *Id.* ¶ 25.

[55]  *Id.* ¶ 26.

[56]  *Id.* ¶ 27.

[57]  *Id.* ¶ 28.

Plaintiff.[58]  Plaintiff was forcibly handcuffed, placed in an emergency restraint chair, and transported to the medical department of the prison.[59]

Once he was transported to the medical department, Plaintiff complained to Karen Lane, LPN, that he had shortness of breath and pain in his right rib.[60] Plaintiff was then transported to York Hospital where X-rays revealed that he had no injuries to his ribs, lungs, right shoulder, right elbow, or right wrist.[61]  Hospital employees told Plaintiff that the X-rays "didn't show anything."[62]  Plaintiff asked the hospital staff to perform additional tests, but they told him that they did not think he was injured.[63]

After returning to York County Prison from the hospital, Plaintiff was interviewed by prison counselor Chandrelle Asper.[64]  Plaintiff told Asper that he had no physical or mental problems at that time.[65]  Plaintiff did not tell Asper that he was suffering any severe pain in his shoulder or chest during the interview.[66]

On May 19, 2017, six days after his first trip to the hospital, Plaintiff suffered multiple seizures and was found unconscious in his cell.[67]  He was taken

---

[58]  *Id.* ¶ 29.
[59]  *Id.*
[60]  *Id.* ¶ 30.
[61]  *Id.* ¶ 31.
[62]  *Id.* ¶ 32.
[63]  *Id.* ¶ 33.
[64]  *Id.* ¶ 35.
[65]  *Id.*
[66]  *Id.* ¶ 40.
[67]  *Id.* ¶ 46.

to the emergency room at York Hospital, at which point hospital staff found

evidence of a broken collarbone and multiple chest injuries.[68]

## VI.   ANALYSIS

Plaintiff's constitutional claims against the York County Defendants are

brought under 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .

42 U.S.C. § 1983.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate

a violation of a right secured by the Constitution and the laws of the United States

[and] that the alleged deprivation was committed by a person acting under color of

state law."[69]  "The first step in evaluating a section 1983 claim is to 'identify the

exact contours of the underlying right said to have been violated' and to determine

'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"[70]

Plaintiff's claims against York County Defendants sound in excessive force.

Because he was a pretrial detainee at the time of the alleged incident, the question

---

[68]  *Id.*
[69]  *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).
[70]  *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

of whether the force was excessive is governed by the Due Process Clause of the Fourteenth Amendment rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment.[71]

Pretrial detainees are entitled to at least as much protection from excessive force as prisoners who have been convicted of a crime.[72]  Unlike prisoners who have been convicted of a crime, who may not be subjected to cruel and unusual punishment, pretrial detainees "cannot be punished at all under the Due Process Clause."[73]  Thus, pretrial detainees may not be subjected to "excessive force that amounts to punishment."[74]

Unlike excessive force claims under the Eighth Amendment, which require plaintiffs to establish both an objective element and a subjective element to prove excessive force, excessive force claims under the Fourteenth Amendment are based exclusively on an objective-reasonableness standard.[75]  Thus, a pretrial detainee seeking to establish that the use of force was excessive "must show *only* that the force purposely or knowingly used against him was objectively unreasonable."[76]

---

[71]  *Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)).

[72]  *Bistrian v. Levi*, 912 F.3d 79, 91 (3d Cir. 2018) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 188 n.10 (3d Cir. 1993)).

[73]  *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (citing *Bell*, 441 U.S. at 520).

[74]  *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).

[75]  *Id.* (citing *Kingsley v. Hendrickson*, 578 U.S. 389, 396-400 (2015)).

[76]  *Id.* (emphasis in original) (citing *Kingsley*, 578 U.S. at 396-97).

There is no mechanical formula for determining when force is objectively unreasonable under the Fourteenth Amendment.[77]  Instead, courts and juries must look to the particular facts and circumstances of the case, including "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting."[78]  These circumstances should be considered "from the perspective of a reasonable officer on the scene."[79]  A plaintiff can establish that the force used was excessive if he shows that the force was "not 'rationally related to a legitimate nonpunitive governmental purpose'" or that the force used was "excessive in relation to that purpose."[80]

Applying these standards under the Fourteenth Amendment to the facts of this case, we will deny Defendants' motion for summary judgment because there are genuine issues of material fact as to whether the force used by Cessna, Fitski, and Velasquez was excessive.  The admitted facts show that Plaintiff initiated a physical confrontation with Cessna and that Cessna and the other officers then used some measure of force to gain physical control over Plaintiff, including a leg

---

[77]  *Kingsley*, 578 U.S. at 397 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)).
[78]  *Id.* (citing *Graham*, 490 U.S. at 396).
[79]  *Id.* (quoting *Graham*, 490 U.S. at 396).
[80]  *Id.* (quoting *Bell*, 441 U.S. at 561).

sweep and forcible application of handcuffs.  Although X-rays at the York Hospital did not initially show any serious injuries, Plaintiff's subsequent trip to the hospital six days later indicated that he had a broken collarbone and several chest injuries. Viewing these facts in the light most favorable to Plaintiff as the non-movant, we conclude that a reasonable finder of fact could find that the force used by Defendants was either not rationally related to a legitimate governmental purpose or was excessive in relation to that purpose.  Accordingly, we will deny the motion for summary judgment as to Defendants Cessna, Fitski, and Velasquez.

## VII.  CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by the PrimeCare Defendants will be granted and the motion for summary judgment filed by the York County Defendants will be granted in part and denied in part.  As a result, all Defendants other than Cessna, Fitski, and Velasquez will be granted summary judgment.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

16